UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHAWANDA V COLLINS,

           Plaintiff,

    v.                                                        Case No. 23-cv-1313-bhl

TEAM MANAGEMENT LLC et al,

           Defendant.

## SCREENING ORDER

        On October 5, 2023, Plaintiff Shawanda V. Collins, proceeding *pro se*, filed a complaint against Defendant Team Management LLC. (ECF No. 1.) That same day, she filed a motion for leave to proceed without prepayment of the filing fee, or *in forma pauperis* (IFP). (ECF No. 2.) The Court screened her complaint on October 13, 2023, granting her IFP motion, but directing her to file an amended complaint if she wished to proceed with her claims. (ECF No. 4.) Collins filed an amended complaint on November 9, 2023, (ECF No. 5), and a "corrected" amended complaint on November 22, 2023. (ECF No. 8.) The Court will screen Collins' latest filing, the corrected amended complaint.

### SCREENING THE COMPLAINT

        In screening a *pro se* complaint to determine whether the action is frivolous, fails to state a claim, or is brought against an immune defendant, the Court applies the liberal pleading standards embraced by the Federal Rules of Civil Procedure. To survive screening, the complaint must comply with the Federal Rules and state at least plausible claims for which relief may be granted. To state a cognizable claim, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted). If the complaint fails to allege sufficient facts to state a claim on which relief may be granted, it must be dismissed. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ALLEGATIONS OF THE AMENDED COMPLAINT

In her amended complaint, Collins states that she is an African American woman who lives in Milwaukee, Wisconsin. (ECF No. 8 ¶12.) Defendants Eighteen87 on Water LLC and Movin' Out Inc are both "owners and operators" of the Eighteen87 on Water property in Milwaukee, Wisconsin. (*Id.* ¶16.) Eighteen87 on Water receives Section 42 Low Income Housing Tax Credits in exchange for listing 75% of their units as "affordable housing." (*Id.* ¶34.) In particular, Eighteen87 on Water lists 12 units at 30% of the "Area Median Income (AMI)" level, 28 units at or below 50% AMI, 13 units at or below 60% AMI, and 19 units at market rate. (*Id.*) Defendant Team Management LLC is the operator manager of the Eighteen87 on Water property and deals with rental applications. (*Id.* ¶¶17–18.) Prior to September 1, 2023, those seeking rental units learned about Eighteen87 on Water through "211 Impact, online advertisements, broker advertising, housing agencies, news media" or through Team Management. (*Id.* ¶39.)

Despite having a fixed income, several disabilities, and struggling with homelessness, Collins "has an adequate credit score" and no history of evictions. (*Id.* ¶¶14–15, 26.) Collins also has a criminal record that is "over 19 years old." (*Id.* ¶13.) In her search for stable, suitable housing, Collins spoke to housing coordinators at "211 Impact" and "Continuum of Care," who told her that she may secure housing through their services if she has an income "much less" than "the limit." (*Id.* ¶29.) Collins then completed the first step in the application process for an

apartment at Eighteen87 on Water on June 26, 2023: a pre-screening survey. (*Id.*) But that same day, Collins "received a result" from the survey which stated she failed to "meet the minimum criteria required to be considered" for a rental unit at Eighteen87 on Water. (*Id.* ¶30.)

Collins was not satisfied with this answer. She "filled out this same online screening form several times" between June 2023 and August 2023. (*Id.* ¶31.) Collins controlled for "other demographic factors" like "income and eviction history," but realized that it was only when she stated that "no-one in this household has any previous felonies" did her application get approved "to join the pre-lease waiting list." (*Id.*) Collins called Team Management "several times" to report her concerns, but they did not return any of her calls. (*Id.* ¶32.) Nor did they agree to change their pre-screening process, which Collins alleges "is unjustified disparate treatment of African-American and Hispanic applicants and [herself]." (*Id.* ¶36.) Instead, "Defendants explicitly confirmed" their practice to Collins "five times" over "several months." (*Id.* ¶37.)

Collins insists that Eighteen87 on Water, Movin' Out, and Team Management all denied her "outright" based on her prior felony record in violation of the FHA's prohibition of facially neutral housing practices which "have a disparate impact on the basis of race or color." (*Id.* ¶39.) In Collins' view, "blanket bans on eligibility based on criminal history result in the denial of housing opportunities at a disproportionate rate for African Americans and minorities," because Black people are overrepresented in the criminal justice system. (*Id.* ¶¶41, 50.) In support of this argument, Collins points to U.S. Department of Housing and Urban Development (HUD) policies which "conclude that a housing provider can violate the Fair Housing Act when a criminal-based restriction, without justification, burdens renters or housing participants of one race or national origin over those members of another race or national origin." (*Id.* ¶47.) She also points to presidential guidance to avoid exclusions based on arrest records only and take "into account mitigating circumstances such as time passed since the conviction," "evidence of rehabilitation," or "good tenant history." (*Id.* ¶49.) And Collins cites various sources and statistics suggesting that black people are incarcerated and convicted at significantly higher rates than their white counterparts, nationally, in Wisconsin, and in Milwaukee County. (*See id.* ¶¶44–45, 48, 50, 51–53.) Thus, by refusing to evaluate Collins' rental application holistically, she insists, Defendants violated the FHA. (*Id.* ¶¶55–56, 58.)

Collins further alleges Eighteen87 on Water deters disabled low-income renters in addition to renters with prior felonies. (*Id.* ¶33.) In particular, the property's advertisement states that their

"policy is that income must be at least 40% of rent amount, but also must be under the max gross income." (*Id.*) This level of income "is above the average single disabled person's income in Wisconsin receiving SSDI or SSI" and "is inconsistent with WHEDA and HUD income requirements" and further deters "otherwise qualified disabled persons to apply, rent and live at Eighteen87 on Water." (*Id.*) And Defendants also "maintain and enforce a pre-screening" of extremely low income (30%) Section 42 prospective applicants by excluding those with criminal records. (*Id.* ¶35.)

In sum, Collins alleges that "because so many extreme low-income African Americans are disproportionately arrested, convicted[,] and incarcerated, imposing barriers on extreme low-income individuals with a criminal history produces disparities in applicants eligible to rent available housing." (*Id.* ¶54.) To Collins, the defendants thus "engaged in patterns, policy, and/or practice[s] of illegal discrimination on the basis of disability, race and color." (*Id.* ¶34.)

Collins alleges two causes of action. First, she claims that Defendants' denial of housing and failure to conduct individualized assessments "on a case-by-case basis" for those with a criminal history disparately impacts African Americans, thus violating the Fair Housing Act, Title VIII of the Civil Rights Act of 1968. (*Id.* ¶70 (citing 42 U.S.C. § 3604(a).).) Second, she alleges that Defendants' "advertising an income policy" which bars "otherwise qualified disabled extremely low-income individuals" from housing violates both the FHA § 3601 et seq. and Wis. Stat. § 106.50(1)(g) through its "disproportionate and disparate impact on minorities and African Americans compared to similarly situated Whites." (*Id.* ¶71.) Collins seeks a declaratory judgment, injunctive relief, and compensatory and punitive damages. (*Id.* at 20–21.)

## ANALYSIS

Congress initially enacted the Fair Housing Act (FHA) "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The FHA specifically makes "it unlawful 'to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." *Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir. 2009) (quoting 42 U.S.C. § 3604(a)). Congress later amended the FHA to "specifically prohibit discrimination in housing on the basis of disability." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 782 (7th Cir. 2002) (citing the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3604(f)).

The FHA's racial discrimination provision, Section 3604(a), permits FHA claims based on discriminatory effects without a showing of discriminatory intent. *See Metro. Hous. Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977). But not "every action which produces discriminatory effects is illegal." *Id.* Courts must analyze four factors in determining whether disparate impact recovery under the FHA is proper: first, the strength of the plaintiff's showing of a discriminatory effect; second, evidence of discriminatory intent; third, the defendant's interest in the challenged conduct; and fourth, whether the plaintiff seeks affirmative relief. *Id.* at 1291–93. The second factor, evidence of discriminatory intent, is the "least important" of the four. *Id.* at 1292.

At least for purposes of screening, the Court concludes that Collins has alleged enough facts to proceed on her racial discrimination claim. She has provided statistics to allege that Defendants' racially neutral policy of excluding applicants with a criminal history could disproportionately impact African Americans. Defendants are also private entities and not promoting a legitimate government interest, further weighing in Collins's favor. *See id.* at 1293. Collins has not alleged discriminatory intent, but such a finding "is often proven by circumstantial evidence" and is the least important factor. *See Powers v. Dole*, 782 F.2d 689, 694 (7th Cir. 1986). And while Collins seeks affirmative relief in part, the Court is not (yet) deciding whether to grant that relief. At the screening stage, what Collins has alleged is enough to allow this claim to survive. *See State Fin. Bank, N.A. v. City of S. Milwaukee*, No. 00-C-1530, 2009 WL 10713315, at *8 (E.D. Wis. Mar. 25, 2009) (citing *Hispanics United of DuPage County v. Village of Addison*, 988 F. Supp. 1130, 1151 (N.D. Ill. 1997)).

Collins's claims for disability and income discrimination are a different matter; both fail as a matter of federal law. By the plain terms of the statute, claims for disability discrimination in housing must allege that the discrimination was "because of" a disability. *See* § 3604(f); *Wis. Comm. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006). Thus, to assert a prima facie case of disability discrimination under Section 3604, Collins must allege that she is handicapped, that Defendants were aware of this handicap, that she "was ready and able to accept defendant's offer to rent," and that Defendants refused to deal with her. *See Nesbitt v. Draper & Kramer, Inc.*, No. 08 C 2684, 2008 WL 4542942, at *2 (N.D. Ill. May 23, 2008) (citing *Hamilton v. Svatik*, 779 F.2d 383, 337 (7th Cir. 1985)). While Collins has alleged she is disabled, the remainder of her complaint does not state whether Defendants were aware of her disability, nor

that they refused to deal with her. Most problematic for her claim is that Collins alleges she was unable to rent from Defendants because of her prior criminal history, not because of her disability. Her allegation, if true, precludes any finding of causation. Accordingly, she has therefore failed to state a federal claim for disability discrimination in violation of the FHAA.

Moreover, neither the FHA nor the FHAA provides relief for discrimination on the basis of income alone. *See* § 3604; *Nesbitt*, 2008 WL 452942, at *3. As explained in *Nesbitt*, Section 8 of the United States Housing Act provides subsidies for low-income renters, but "the federal government does not require landlords to participate in the program," and, regardless, Collins has not alleged that Defendants participate in the Section 8 program, so the provision does not provide her a legal basis for her claim. *See Nestbitt*, 2008 WL 4542942, at *3 (citing *Hays v. City of Urbana*, 104 F.3d 102, 102 (7th Cir. 1997)). Therefore, to the extent Collins alleges discrimination on the basis of income or disability, she has failed to state a federal claim for relief.

Collins also cites Wisconsin Statute Section 106.50 as a basis for relief on her disability claim. Section 106.50 intends to "render unlawful discrimination in housing" on the basis of "sex, race, color, sexual orientation, disability, religion, national origin, marital status, family status, status as a victim of domestic abuse, sexual assault, or stalking, lawful source of income, age, or ancestry." Wis. Stat. § 106.50(1). The statute makes unlawful "for any person to discriminate" "[b]y advertising in a manner that indicates discrimination by a preference or limitation" or "[b]y otherwise making unavailable or denying housing." § 106.50(2)(d), (l). The statute further defines discriminate to "mean[] to segregate, separate, exclude, or treat a person or class of persons unequally" "because of" the protected categories enumerated in Section 106.50(1). § 106.50(1m)(h). Finally, it allows for any person alleging a violation of subsection (2) to bring a civil action for injunctive relief and damages. § 106.50(6m).

Under this Wisconsin state statute, Collins has sufficiently stated a claim for disability discrimination. She has alleged that Defendants advertised that prospective Eighteen87 on Water renters must have a "40% income level," which deters those who are on SSDI income. (ECF No. 8 ¶33.) Again, at this stage of the proceedings, this is enough to state a claim under Section 105.50(2). She therefore may proceed on her FHA racial discrimination claim and her Wisconsin statutory disability discrimination claim.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to Fed. R. Civ. P. 4(c)(3), the U.S. Marshals Service shall serve a copy of the complaint, waiver of service form and/or the summons, and this order upon defendants. Collins is advised that Congress requires the U.S. Marshal's Service to charge for making or attempting such service. 28 U.S.C. § 1921(b). The current fee for waiver of service packages is $8 per item. 28 C.F.R. § 0.114(a)(2). Congress has not made any provision for waiver of these service fees.

Collins is now required, under Fed. R. Civ. P. 5(a), to send a copy of every paper or document filed with the Court to the opposing party or its attorneys. Collins should also retain a personal copy of each document. The Court may disregard any papers or documents which do not indicate that a copy has been sent to defendant or its attorneys. Collins is further advised that her failure to make a timely submission, including notifying the Court of any changes in address, may result in the dismissal of this case for failure to prosecute under Civil L. R. 41.

**IT IS FURTHER ORDERED** that the defendants shall file a responsive pleading to the complaint within the time allowed under the Federal Rules of Civil Procedure.

Dated at Milwaukee, Wisconsin on November 29, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge