UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHAWANDA V. COLLINS,

          Plaintiff,

v.

          Case No. 23-cv-1313-bhl

TEAM MANAGEMENT LLC, et al.,

          Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

      Plaintiff Shawanda V. Collins is proceeding *pro se* on three claims against Defendants Eighteen87 on Water LLC ("Eighteen87"), Movin' Out Inc. ("Movin' Out"), and Team Management LLC ("Team Management"), all relating to her subsequently withdrawn application for a subsidized apartment unit at a complex owned and managed by Defendants. (ECF No. 48.) Collins alleges that Defendants violated the Fair Housing Act by unlawfully discriminating against her based on her race and by retaliating against her after she invoked her Fair Housing Act rights. (*Id.*) She also claims Defendants violated Wis. Stat. §106.50 by advertising in a way that deterred disabled adults from applying for housing. (*Id.*) She seeks monetary, declaratory, and injunctive relief. (*Id.*)

      Defendants have moved for summary judgment on all three claims. (ECF Nos. 122, 131.) They maintain that Collins's Fair Housing Act claims fail because she terminated her own rental application and thus was not denied housing by Defendants for any discriminatory or retaliatory reason. (ECF No. 123 at 15, 24–25; ECF No. 132 at 12, 20–21.) Defendants also argue that Collins lacks standing to pursue her state law claim because the record establishes that she did apply for housing and was thus not deterred from applying as she claims in her complaint. (ECF No. 123 at 23; ECF No. 132 at 23–24.) Given the undisputed facts, the Court will grant Defendants' motions for summary judgment and dismiss the case.

## FACTUAL BACKGROUND

Collins is a physically disabled African American woman. (ECF No. 153 ¶¶19–21; ECF No. 154 ¶¶21–23.) She also has a criminal record. (ECF No. 153 ¶20; ECF No. 154 ¶23.) Collins has been convicted of at least one felony, although her convictions are all dated and occurred more than three years before the events alleged in the complaint. (ECF No. 153 ¶20; ECF No. 154 ¶22.)

Movin' Out is a non-profit organization that works to improve housing access and support for people who meet its income, disability, or veteran eligibility criteria. (ECF No. 153 ¶1.) Eighteen87 is the partial owner of a recently constructed apartment complex (the "Apartment Complex") located at 1887 North Water Street in Milwaukee, Wisconsin. (*Id.* ¶¶3–4; ECF No. 154 ¶7.) Team Management is a property management company that manages commercial and multi-family buildings. (ECF No. 154 ¶1.) In April 2022, Eighteen87 contracted with Team Management to manage the Apartment Complex and to secure lease agreements with prospective tenants. (*Id.* ¶4.)

Eighteen87 developed the Apartment Complex with the intention of providing affordable housing to qualified tenants. It planned the Apartment Complex to take advantage of several government subsidy programs, including the Department of Housing and Urban Development's "811 Program" and the Internal Revenue Service's "Section 42 Program." (ECF No. 153 ¶¶5–6, 7–9; ECF No. 154 ¶¶8–11.) These programs restricted the tenants who were eligible to rent units in the Apartment Complex. (ECF No. 153 ¶¶6, 8; ECF No. 154 ¶¶9, 11.) The programs also restricted the amount of rent that could be charged those tenants. (ECF No. 153 ¶¶6, 8–9; ECF No. 154 ¶¶9, 11.)

The Apartment Complex was under construction for most of 2023 and occupancy was not expected to begin until November 2023. (ECF No. 154 ¶¶13–14, 26.) Before construction was completed, Team Management established a website and began soliciting potential tenants. (ECF No. 153 ¶¶14, 25; ECF No. 154 ¶¶15, 24.) Given the restrictions imposed by the 811 and Section 42 Programs, the website explained the various income eligibility requirements for applicants seeking housing. (ECF No. 153 ¶¶15–18; ECF No. 154 ¶¶16–19.)

To line up potential tenants, in early June 2023, Team Management created a "Pre-Leasing Waitlist" page on the Apartment Complex's website. (ECF No. 153 ¶23; ECF No. 154 ¶24.) The Pre-Leasing Waitlist page included an online form through which interested persons could express an interest in securing a unit in the Apartment Complex. (ECF No. 153 ¶25; ECF No. 154 ¶28.)

The Pre-Leasing Waitlist form asked interested persons a variety of questions, such as how many people lived in the household, what the interested person's household income was, and whether any adults in the household had ever been evicted. (ECF No. 153 ¶27; ECF No. 154 ¶30; ECF No. 126-2 at 3–4.) The form also asked whether the prospective applicant, or a household member, had ever been convicted of a felony. (ECF No. 153 ¶27; ECF No. 154 ¶30.) The felony question offered three options for responses: (1) the prospective applicant or a household member had been convicted of a felony less than three years ago; (2) the prospective applicant or a household member had been convicted of a felony more than three years ago; or (3) no one in the household had any prior felonies. (ECF No. 153 ¶28; ECF No. 154 ¶31.)

In late June 2023, Collins completed the Pre-Leasing Waitlist form. In her initial responses, she indicated that she had a felony conviction that was more than three years old. (ECF No. 153 ¶29; ECF No. 154 ¶34; ECF No. 161 ¶11; ECF No. 166 ¶11.) In response, the website provided an automated message that she did not meet the minimum criteria to be considered for a tenancy. (ECF No. 153 ¶30; ECF No. 154 ¶35; ECF No. 161 ¶12; ECF No. 166 ¶12.) The response did not explain the basis for her ineligibility. (ECF No. 153 ¶¶29–30; ECF No. 154 ¶¶34–35; ECF No. 161 ¶¶11–12; ECF No. 166 ¶¶11–12.) Over the next several weeks, Collins continued to resubmit responses to the Pre-Leasing Waitlist form, changing her answers to try to determine why she did not meet the minimum criteria to lease a unit. (ECF No. 153 ¶¶31–32; ECF No. 154 ¶¶36–37; ECF No. 161 ¶17; ECF No. 166 ¶17.) Based on her submissions, she discovered that when she responded that she had a felony conviction that was more than three years old, she was informed she did not meet the minimum criteria, but when she responded that she had no prior felonies, she was told she was eligible. (ECF No. 153 ¶¶33–34; ECF No. 154 ¶¶38–40.) Collins called Team Management several times between June and September 2023 to report the survey's response to her answers. (ECF No. 161 ¶¶14, 25; ECF No. 166 ¶¶14, 25.) No one returned her calls. (ECF No. 161 ¶26; ECF No. 166 ¶26.)

The message Collins received was an error that resulted from a mistake Team Management made when it set up the Pre-Leasing Waitlist form. (ECF No. 126 ¶¶26–28.) Team Management's screening policy stated that it would not accept tenants who had recent felony convictions (convictions *within* the past three years). (*Id.* ¶28; ECF No. 152-7 at 1.) When it put the website form in place, however, it set up the system to provide the opposite and wrong response to questions about prior felony convictions. (ECF No. 126 ¶¶26–28.) Thus, applicants who reported

they had recent felony convictions were told they satisfied the minimum criteria, while applicants who reported only older felonies were told they did not meet the minimum criteria. (*Id.*; ECF No. 153 ¶¶33, 35–36; ECF No. 154 ¶¶38, 41–42.) Collins did not uncover this error because, in her many submissions, she never responded that she had a felony conviction less than three years old. (ECF No. 153 ¶35; ECF No. 154 ¶41.)

On July 9, 2023, Collins filed a complaint with the Department of Workforce Development ("DWD") against Team Management. (ECF No. 161 ¶26; ECF No. 166 ¶26.) Four months later, on November 16, 2023, the DWD determined there was no probable cause to believe Team Management violated Wisconsin's Open Housing Laws. (ECF No. 161 ¶29; ECF No. 166 ¶29.) Although Collins initially appealed the decision, she later withdrew her complaint. (ECF No. 161 ¶30; ECF No. 166 ¶30; ECF No. 125-5 at 2.)

In late-September 2023, Team Management closed the Pre-Leasing Waitlist. (ECF No. 161 ¶16; ECF No. 166 ¶16.) At time the waitlist closed, Team Management had not made any changes to the eligibility questions posed on the Pre-Leasing Waitlist form. (ECF No. 161 ¶¶15–16, 28; ECF No. 166 ¶¶15–16, 28.) Team Management also then opened an actual waitlist for persons who wished to lease units at the Apartment Complex. (ECF No. 153 ¶39; ECF No. 154 ¶44.) On September 20, 2023, Team Management invited Collins to apply for the waitlist. (ECF No. 153 ¶¶40–41; ECF No. 154 ¶¶48–49.) Collins spoke with employees from Team Management, informing them that she was disabled and had prior felony convictions, and Team Management employees continued to help her complete the waitlist application. (ECF No. 153 ¶¶44–45; ECF No. 154 ¶¶53–54.) On October 4, 2023, Collins completed the waitlist application and disclosed a 1995 felony conviction. (ECF No. 153 ¶¶46–47; ECF No. 154 ¶¶55–56.)

On February 15, 2024, Collins received a letter informing her that she was approved to apply for a specific unit at the Apartment Complex. (ECF No. 153 ¶58; ECF No. 154 ¶81.) Team Management follow up by sending her a move-in application for that unit, but Collins did not complete the application. (ECF No. 153 ¶59; ECF No. 154 ¶82.) On March 6, 2024, Collins toured the unit but rejected it as unacceptable because it did not have a bathtub. (ECF No. 153 ¶¶61–62; ECF No. 154 ¶¶85–86.) In response, Defendants considered whether Collins could be moved to a unit with a bathtub. (ECF No. 161 ¶¶56–58; ECF No. 166 ¶¶56–58.) On March 14, 2024, before Defendants could respond with an offer or a rejection of Collins's requested unit change, Collins directed Team Management to take her off the wait list for housing at the

Apartment Complex. (ECF No. 153 ¶63; ECF No. 154 ¶87.) She explained that no one "seem[ed] to know" how she got on the waitlist in the first place and that she considered the circumstances "suspect." (ECF No. 153 ¶63; ECF No. 154 ¶87.) On March 29, 2024, Team Management complied with her request and cancelled Collins's application. (ECF No. 153 ¶64; ECF No. 154 ¶89.)

## SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different characterizations of the facts, the Court must view the record in the light most favorable to the non-moving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in

the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

## ANALYSIS

### I. Collins's Fair Housing Act Claims Fail Because the Undisputed Facts Show that Defendants Did Not Deny Her Housing.

Collins alleges that Defendants violated the Fair Housing Act in two ways. First, she claims they violated Section 3604(a) of the Act by discriminating against her based on her race in connection with her attempt to secure an apartment. (ECF No. 48 ¶¶72–73.) Second, she claims Defendants violated Section 3617 by unlawfully retaliating against her after she invoked her Fair Housing rights. (ECF No. 48 ¶¶76–77.) Defendants maintain that Collins was not denied housing for any discriminatory reason and, in fact, she chose to withdraw her own application, defeating both of her Fair Housing Act claims. As explained below, the Court agrees with Defendants. Collins cannot show Defendants violated her Fair Housing rights because she withdrew her own application and thus cannot show that she was the victim of discrimination or retaliation.

#### A. Collins's Discrimination Claim Fails Because the Record Shows that She Was Offered an Apartment but Chose to Withdraw Her Own Application.

Collins's first Fair Housing Act claim is based on Section 3604(a) of the statute, which makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. §3604(a). More specifically, she contends Defendants violated Section 3604(a) by "automatically barring anyone with a felony conviction" from housing at the Apartment Complex, a practice that has an adverse and disproportionate impact on minorities. (ECF No. 48 ¶73.) The problem with Collins's discrimination claim is that the record confirms that Defendants did not in fact discriminate against her.

To discriminate against a plaintiff in violation of the Fair Housing Act, housing must be made "unavailable" to the plaintiff by the defendant. *Bloch v. Frischholz*, 587 F.3d 771, 776–77 (7th Cir. 2009). Housing is made unavailable when a defendant denies the plaintiff access to housing or otherwise denies the plaintiff the right to live where he or she chooses. *See id.* at 777–

79. If access to housing is denied, then the denial must have been "because of race." *Id.* at 777. "Because of race" does not necessarily require discriminatory intent. *See Metro. Hous. Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977). Actions that have a discriminatory effect or impact may also violate the Fair Housing Act's discrimination provision. *See id.* Accordingly, Collins could succeed on her Section 3604(a) claim by producing evidence that Defendants denied her access to housing based on her felony status, and that this decision had a discriminatory effect on her due to her race. *See Bloch*, 587 F.3d at 777–79; *see also Metro. Hous. Dev. Corp.*, 558 F.2d at 1290; (ECF No. 48 ¶¶72–73).

Defendants maintain that Collins's Fair Housing Act discrimination claim fails because they never made housing unavailable to Collins (and certainly not due to her race). (ECF No. 123 at 15–16; ECF No. 132 at 12.) They point to undisputed facts showing that Collins was offered a unit at the Apartment Complex and was invited to tour the space. (ECF No. 123 at 15–16.) After providing her the tour and the opportunity to rent that unit, it was Collins who complained about the unit's lack of a bathtub and, while Defendants tried to accommodate her request for a different bathroom setup, she unilaterally chose to withdraw her application. Accordingly, Defendants maintain, the facts show they never denied her the right to live where she chose. (*Id.*)

In response, Collins highlights that Defendants offered her a unit only after she filed her DWD complaint. (ECF No. 152 at 9–11.) She suggests that, absent her DWD complaint, Defendants would never have offered her an apartment. (*See id.*) These assertions do not alter the fact that Collins was offered an apartment and chose to withdraw her application for any unit in the Apartment Complex. These key and undisputed facts establish that Collins was not actually denied housing by Defendants. In the end, Defendants simply honored her request to withdraw her application for housing in their development. Although Collins may have been suspicious of Defendants' offer of housing after her DWD complaint, that suspicion does not mean that she was discriminated against with respect to housing.

Collins also criticizes Defendants' use of the Pre-Leasing Waitlist and contends the website form may have had a potential disparate impact on minorities by excluding applicants with a criminal record. (*Id.* at 15–19.) But this does not help Collins. It is undisputed that Team Management actually approved her for a unit, provided her a tour, and offered to rent that unit to her. After touring it, she chose to withdraw her application, and Team Management respected that decision and cancelled her application. The record does not show that Collins was actually

discriminated against or denied housing. She did not end up with a unit at the Apartment Complex as a result of her own decision to withdraw her application, and Defendants' action in accepting her withdrawal was not a denial of access to housing. Moreover, nothing suggests that the cancellation of Collins's application or Defendants' acceptance of her withdrawal had anything to do with Collins's felony conviction or race. These facts defeat her Fair Housing Act discrimination claim.

Collins's invocation of a disparate impact theory likewise does not save her claim. Disparate impact is the second part of the analysis; it is considered *after* housing was made unavailable to a person for the proposed discriminatory reason. *See Bloch*, 587 F.3d at 776–77 (housing must be made unavailable in some manner to pursue a Fair Housing Act discrimination claim); *see also Metro. Hous. Dev. Corp.*, 558 F.2d at 1288–90 (unavailability "because of race" can include actions having a discriminatory effect). Accordingly, to pursue a Fair Housing Act disparate impact claim, Collins must first show that *she* was personally denied housing because of her felony conviction, making her the victim of discrimination. Because she was not denied housing because of her felony conviction, she does not have a claim under the Fair Housing Act. That she believes that the Pre-Leasing Waitlist form potentially had a disparate impact on others, even if true, does not mean that *her rights* were violated. The undisputed facts show the opposite—Collins was not denied housing in violation of the Fair Housing Act. Accordingly, her Fair Housing Act discrimination claim will be dismissed.[1]

### B. Collins's Withdrawal of her Application Also Defeats her Fair Housing Act Retaliation Claim.

Collins's second claim is for retaliation under Fair Housing Act Section 3617, which makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the Fair Housing Act. 42 U.S.C. §3617. Specifically, Collins alleges that because she asked about

---

[1] This is not a class action, and Collins cannot assert claims or grievances on behalf of others. When she sought to pursue class-wide relief, the Court rejected her attempt and explained to her that, because she is not a lawyer, she cannot represent a class. (ECF No. 31 at 1–2); 28 U.S.C. §1654; *see also Howard v. Pollard*, 814 F.3d 476, 478–79 (7th Cir. 2015). Moreover, even if she was represented, and this was a class action, Collins cannot act on behalf of others, given that she has not suffered discrimination herself. *See Hollingsworth v. Perry*, 570 U.S. 693, 707–08 (2013) (providing that, even when a litigant can assert the interest of others, the litigant must have suffered the injury complained of).

the income requirements and pursued her federal claims, Defendants canceled her rental application and refused to return her calls. (ECF No. 48 ¶¶76–77.)

To succeed on her Section 3617 claim, Collins must prove that: (1) she is a protected individual under the Fair Housing Act; (2) she was engaged in the exercise or enjoyment of their fair housing rights; (3) Defendants coerced, threatened, intimidated, or interfered with Collins on account of her Fair Housing Act-protected activity; and (4) Defendants were motivated by an intent to discriminate. *See Watters v. Homeowners' Ass'n. at Preserve at Bridgewater*, 48 F.4th 779, 785 (7th Cir. 2022).

Defendants insist they are entitled to summary judgment on this claim because, again, the undisputed facts establish that Collins withdrew her own application and thus they did not interfere with her Fair Housing rights, in retaliation or otherwise. (ECF No. 123 at 25; ECF No. 132 at 24–25.) Collins does not respond to Defendants' argument in her briefing. (*See* ECF No. 152 at 20–23.) The Court agrees that Collins's undisputed withdrawal of her own application defeats her claim that she was denied housing in retaliation for exercising her Fair Housing rights. Collins has not come forward with any evidence that Defendants coerced, threatened, intimidated, or interfered with her on account of her Fair Housing-protected activity. Her conclusory assertions that Defendants retaliated against her and her unsupported suspicions about Defendants' motives cannot carry the day. Her failure to provide evidence supporting her retaliation claim means it must be dismissed. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (providing that a claim not raised in opposition to summary judgment is abandoned); *see also Thurman v. Village of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006) (affirming summary judgment against the plaintiff when the plaintiff provided no evidence in support of his claim); *Celotex*, 477 U.S. at 322–23 (explaining that summary judgment for the movant must be granted when there is a complete failure of proof concerning an essential element).

Instead of providing evidence in support of her retaliation claim, Collins argues, for the first time in her briefing, that Defendants violated a different Fair Housing provision—Section 3604(f)—by failing to reasonably accommodate her need for a bathtub. (ECF No. 152 at 20–23; *see also* ECF No. 48 ¶¶77, 77F, 77G.) Defendants object, arguing that this claim was never pleaded in Collins's complaint, and it is unfair to them to allow her to change legal theories in the middle of summary judgment briefing. (ECF No. 160 at 12–13; ECF No. 167 at 11–12.) The Court agrees. The Court has discretion to interpret new factual allegations or claims presented in

a brief as a constructive motion to amend. *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023). But it is generally impermissible to present a new claim in opposition to summary judgment. *See id.* at 488–89. Accordingly, the Court will not permit Collins to pursue a brand-new claim at this stage of litigation. Her argument is made at the eleventh hour, after discovery closed and summary judgment briefs submitted, and Defendants had no notice of this new claim until Collins filed her response brief. Her second amended complaint mentions nothing of bathtubs or showers, and she filed it on May 29, 2024—well after a unit with a bathtub was allegedly denied to her. (*See* ECF No. 48.) And although Collins has amended her complaint several times, she never moved for leave to amend during discovery (or even right after it closed). (*See* ECF Nos. 1, 5, 8, 48.) Given these facts, the Court will not permit Collins to pursue a brand-new claim in response to summary judgment.

## II. Collins Has Not Suffered an Injury-In-Fact to Pursue Her State-Law Claim.

Collins's final claim is that Defendants violated Wis. Stat. §106.50 by maintaining a website that displayed income requirements that deterred and indeed made it "impossible" for "the average disabled person" to apply for housing at the Apartment Complex. (ECF No. 48 ¶75B.) Defendants maintain that because Collins did apply for housing, she lacks standing to pursue her claim. (ECF No. 123 at 23; ECF No. 132 at 23–24.)

Federal courts are courts of limited jurisdiction, and, under Article III of the Constitution, a federal court may only exercise federal judicial power to decide actual "cases" and "controversies" falling within the jurisdiction authorized by Congress. *See* U.S. Const. art. III §2. A plaintiff seeking to invoke a federal court's jurisdiction must have a "personal stake" or "standing" in the outcome of the case. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To establish standing, a plaintiff must show (1) an injury-in-fact (2) that is fairly traceable to the defendant and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury-in-fact must be "concrete and particularized" and "actual or imminent." *Id.* at 560. A plaintiff must establish standing for each claim asserted and each form of relief sought. *TransUnion*, 594 U.S. at 431 (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

Defendants maintain that the injury complained of by Collins is that the advertised income requirements for living at the Apartment Complex deterred disabled persons from applying for housing there but that the undisputed facts show that Collins applied for housing at Eighteen 87

and was thus not deterred. (ECF No. 123 at 23; ECF No. 132 at 23–24.) Because Collins never felt the injury she complains of, she has not suffered an injury-in-fact, and she does not have standing to pursue her claim. (ECF No. 123 at 23; ECF No. 132 at 23–24.) Collins insists that she "was deterred" by the statements of income restrictions but does not explain how she was deterred, given that she did apply for housing at the Apartment Complex. (*See* ECF No. 152 at 7.) Instead, Collins spends her brief explaining why Defendants' advertisements deter disabled adults from applying for housing. (*Id.* at 19–20.)

An injury-in-fact is not a "generally available grievance." *Lujan*, 504 U.S. at 573. In other words, standing requires that Collins *herself* suffered an injury. Collins lacks standing to pursue claims on behalf of other disabled individuals. *See Hollingsworth*, 570 U.S. at 707–08. And she cannot shoehorn herself into constitutionally required standing by arguing that disabled persons in general may have suffered an injury from Defendants' conduct. *See FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 393 n.5 (2024). The undisputed facts show that Collins did apply for housing at Eighteen87 in October 2023, (ECF No. 153 ¶46; ECF No. 154 ¶55), and Collins's brief does not explain how Defendants' advertised income requirements deterred her from applying for housing or otherwise injured her specifically. Accordingly, the Court agrees that Collins lacks standing to pursue her Wis. Stat. §106.50 claim and will therefore dismiss that claim.[2]

---

[2] On March 3, 2025, Collins filed a "Motion for Relief from Procedural Technicality" to use undisclosed statistical evidence during summary judgment. (ECF No. 137.) The Court will deny this motion as moot. This evidence does not alter the fact that Collins chose to withdraw her rental application, a fact that defeats her claims regardless of the statistical evidence she seeks to use. After briefing was completed, Collins filed a motion for leave to file a sur-reply for objections made to her proposed undisputed facts. (ECF No. 168.) The Court will grant that motion. Collins next filed a motion for a ruling, (ECF No. 173), but there is no such thing. Accordingly, that motion will be denied.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motions for summary judgment, ECF Nos. 122 & 131, are **GRANTED**. The Clerk is instructed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Collins's motion for relief, ECF No. 137, is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Collins's motion for leave to file surreply, ECF No. 168, is **GRANTED**.

**IT IS FURTHER ORDERED** that Collins's motion for a ruling, ECF No. 173, is **DENIED**.

Dated at Milwaukee, Wisconsin on September 16, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge